UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FEDERAL ENERGY REGULATORY COMMISSION,

        Plaintiff,

   v.

VITOL, INC., et al.,

        Defendants.

No. 2:20-CV-00040-KJM-AC

ORDER

       Third parties move for leave to file a brief as amici curiae. ECF No. 42. Specifically, Edison Electric Institute ("EEI"), Electric Power Supply Association ("EPSA"), and Energy Trading Institute ("ETI") (collectively "Amici") seek leave to file a brief in support of defendant's motion to dismiss, ECF No. 30. For the foregoing reasons, the court GRANTS the motion.

I.    BACKGROUND

       On October 25, 2019, plaintiff Federal Energy Regulatory Commission ("FERC"), unanimously issued a Penalty Order, Compl., Ex. 1 ("Penalty Order"), ECF No. 1-1, against

/////

/////

/////

/////

1

defendants Vitol, Inc.[1] and Federico Corteggiano.[2]  FERC issued the Penalty Order after determining defendants violated Federal Power Act (FPA) § 222(a), 16 U.S.C. § 824v(a), and FERC's Anti-Manipulation Rule, 18 C.F.R. § 1c.2, by selling physical power at a loss in California Independent System Operator's (CAISO) wholesale electric market to eliminate congestion costs in the Cragview LMPs[3] that defendants expected to cause losses in their CRR[4] positions. Compl. ¶ 4, ECF No. 1; *id*. ¶¶ 28–34 (providing background on FERC's enforcement investigation).  FERC ordered Vitol to pay a civil penalty of $1,515,738 and disgorge $1,227,143 in unjust profits, plus applicable interest.  *Id*. ¶ 4.  FERC also ordered Corteggiano to pay a $1,000,000 civil penalty.  *Id*.  Defendants have failed to pay the penalties and disgorge the profits assessed by the Commission within the 60-day payment period provided for in § 31(d)(3)(B) of the FPA, 16 U.S.C. § 823b(d)(3)(B), which ended on December 24, 2019.  *Id*. ¶ 42.

On January 6, 2020, FERC filed a complaint under FPA § 31(d), 16 U.S.C. § 823b(d) (2018), asking this court to affirm and enforce FERC's October 25, 2019 Order. *See generally* Compl.

---

[1] Defendant Vitol Inc., a Delaware corporation with its principal place of business in Houston, Texas, is a direct, wholly-owned subsidiary of Vitol Holding SARL, which in turn is a direct, wholly-owned subsidiary of Vitol Holding BV, a privately held Dutch company engaged in physical distribution and trading of crude oil and petroleum products, energy and other commodities.  Compl. ¶ 5.

[2] Defendant Federico Corteggiano is employed at Vitol Inc. as a trader of purely financial energy-related products. During the relevant period, Corteggiano traded CRRs in CAISO's wholesale electric market. Corteggiano holds a Ph.D. in power system engineering and has extensive experience trading financial products in power markets and resides in Katy, Texas. *Id*. ¶ 6.

[3] The Cragview node is the scheduling and pricing point for power transfers, which in CAISO's model of transmission network is an interface between CAISO and the PacifiCorp-West control area.  *Id*. ¶ 24.  CAISO operates a competitive wholesale electricity market that uses locational marginal prices (LMPs) for settlements of purchases and sales at specific locations. Penalty Order at 6.

[4] CRRs are financial instruments issued by CAISO that allow CAISO market participants to manage their exposure to transmission congestion costs in the day-ahead market. CRRs are allocated to load-serving entities and also offered for purchase in competitive monthly and annual auctions. CRRs have a designated quantity, stated in megawatts (MWs), and term.  *Id*. at 8.

1       On May 4, 2020, the Edison Electric Institute ("EEI"), Electric Power Supply
2  Association ("EPSA"), and Energy Trading Institute ("ETI") (collectively "Amici") filed the
3  instant motion requesting leave to file a brief in support of defendants' motion to dismiss. Mot.,
4  ECF No. 42.  Plaintiff opposes.  Opp'n, ECF No. 57.  The court submitted the motion without a
5  hearing and resolves it here.

6  II.     LEGAL STANDARD

7       The district court has broad discretion regarding the appointment of amici.
8  *Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir. 1982); *In re Roxford Foods Litig.*, 790 F. Supp.
9  987, 997 (E.D. Cal. 1991) ("The privilege of being heard amicus rests solely within the discretion
10 of the court" (citation omitted)).  "An amicus brief should normally be allowed" when, among
11 other considerations, "the amicus has unique information or perspective that can help the court
12 beyond the help that the lawyers for the parties are able to provide." *Cmty. Ass'n for Restoration*
13 *of Env't (CARE) v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999) (citing
14 *N. Sec. Co. v. United States*, 191 U.S. 555, 556 (1903)).

15      While "[h]istorically, amicus curiae is an impartial individual who suggests the
16 interpretation and status of the law, gives information concerning it, and advises the Court in
17 order that justice may be done, rather than to advocate a point of view so that a cause may be won
18 by one party or another[,]" *CARE*, 54 F. Supp. 2d at 975, the Ninth Circuit has said "there is no
19 rule that amici must be totally disinterested." *Funbus Sys., Inc. v. State of Cal. Pub. Utilities*
20 *Comm'n.*, 801 F.2d 1120, 1125 (9th Cir. 1986) (citation omitted); *Hoptowit,* 682 F.2d at 1260
21 (upholding district court's appointment of amicus curiae, even though amicus entirely supported
22 only one party's arguments).

23 III.    DISCUSSION

24      Here, the Amici "collectively represent the electricity companies that handle the
25 bulk of the nation's electricity and are subject to [FERC's] wider Federal Power Act jurisdiction."
26 Mot. at 3.  "EEI is the association that represents U.S. investor-owned electric companies,
27 international affiliates and industry associates worldwide," and its members "own about 75% of
28 transmission system facilities in the country."  Mot. at 3.  "EPSA's members include 16

1  companies, along with state and regional partners, that represent the competitive power industry
2  in their respective regions." *Id.* at 4.  "ETI is a non-profit organization" that "represents a diverse
3  group of energy market participants, ranging from asset owning entities, marketers, hedge funds,
4  exchanges and companies that support participation in the competitive markets." *Id.* Amici seek
5  leave to explain to the court their position that the Fourth Circuit incorrectly determined the
6  operation of U.S.C. § 2462 in *Federal Energy Regulatory Commission v. Powhatan Energy Fund,*
7  *LLC,* 949 F.3d 891 (4th Cir. 2020).[5]  In their proposed amicus brief, Amici assert "the industry
8  does NOT agree with the Fourth Circuit's analysis" and provides their analysis of the accrual of
9  the statute of limitations.  Mot. at 4–5.

10        The court finds Amici's proposed brief provides a focused legal analysis on the
11  statute of limitations issue under 28 U.S.C. § 2462 as relevant to defendants' motion to dismiss.
12  *See* Mot. to Dismiss, ECF No. 30, at 20.  Amici's brief is likely to assist the court in making a
13  well-informed decision regarding the questions of statutory construction it will need to address.
14  *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005)
15  ("District courts frequently welcome amicus briefs from non-parties concerning legal issues that
16  have potential ramifications beyond the parties directly involved") (citation omitted).

17        Accordingly, Amici's motion to file an amicus brief is GRANTED.

18  IV.   CONCLUSION

19        The motion is GRANTED.  This order resolves ECF No. 42.

20        IT IS SO ORDERED.

21  DATED: August 8, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The court notes only the Fourth Circuit has addressed the application of the statute of limitations, 28 U.S.C. § 2462 (2018), to the Commission's claims for civil penalties.  *See* Opp'n at 5 n.3.

4